**TANNER & ORTEGA, L.L.P.**
ATTORNEYS AT LAW
WWW.TANNERORTEGA.COM

HOWARD E. TANNER*
HUGO G. ORTEGA
*MEMBER OF N.Y., N.J. AND D.C. BAR

**NEW YORK CITY OFFICE**
299 BROADWAY
SUITE 1700
NEW YORK, NY 10007
OFFICE: (212) 962-1333
FAX: (212) 962-1778

**WHITE PLAINS OFFICE**
175 MAIN STREET
SUITE 800
WHITE PLAINS, NY 10601
OFFICE: (914) 358-5998
FAX: (914) 761-0995

July 2, 2021

Honorable Nelson Roman
United States District Judge
Southern District of New York
United States District Courthouse
300 Quarropas Street
White Plains, NY 10601

BY ECF AND EMAIL/PDF

Re:     *United States v. Brian Rodriguez*, **19 Cr. 449 (NSR)**
        **Defense Sentencing Letter**

Dear Judge Roman:

I submit this sentencing letter on behalf of Brian Rodriguez, who is scheduled to be sentenced by this Court on Friday, July 16, 2021 at 10:00 am for his plea of guilty to a two-count Superseding Information charging him with conspiracy to commit Hobbs Act Robberies and other overt acts, pursuant to 18 USC §371 and for his aiding and abetting the brandishing of a firearm during the commission of a Hobbs Act Robbery. For the reasons set forth in this letter, I respectfully request that the Court impose the mandatory minimum and below-guidelines range sentence of 84 months' plus one day imprisonment to be followed by 5 years' Supervised Release, which would be sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. §3553(a).

### Case Background, The Plea Agreement and Probation PSR

On April 30, 2019 the defendant was arrested at his home in Yonkers, New York for acting together with co-defendants Anthony Lauria and Anthony Molina, in two Hobbs Act Robberies of Verizon Wireless stores, on August 10, 2017 in New Milford, Connecticut and on February 15, 2019, in Mahopac, New York. At his initial appearance the same day before the Honorable Judith C. McCarthy, the defendant was released on an unsecured bond in amount of $100,000.00 co-signed by three financially responsible persons, two of whom for moral suasion purposes, electronic monitoring and home detention (ECF Doc No. 7). On June 21, 2019, the defendant was arraigned on a four-count indictment charging him with one count of Hobbs Act Robbery conspiracy for each event; one count of Hobbs Act Robbery and one firearm count

1

pursuant to 18 USC §924(c), for the Mahopac store robbery. Having presided over the recent jury trial and guilty verdict of co-defendant Anthony Molina, the Court is well aware of the underlying facts of both robberies. In summary, for the 2017 robbery in New Milford, Connecticut captured on video, a co-defendant entered the store, spoke to an employee and left. Minutes later, Brian Rodriguez and Anthony Molina, who was brandishing a weapon, both entered the store, restrained the store's employees with zip ties, and stole electronic merchandise worth approximately $48,000. The 2019 robbery in Mahopac, New York was similarly executed in which approximately $54,000 of electronic merchandise was stolen.

Shortly after indictment, Brian asked me to engage in plea negotiations with the Government. By email to the Government dated January 22, 2020, I informed AUSA Lindsey Keenan that the defendant accepted the offer and a proposed Plea Agreement was produced, dated January 27, 2020. ▌

▌ Brian suddenly rejected the Government's offer and I so informed Ms. Keenan by email on February 11, 2020. After the defendant's motion to suppress was ostensibly denied by the Court (ECF Doc Nos. 52, 87), the defendant immediately asked me re-engage the Government in plea negotiations.

On October 28, 2020, co-counsel and I met with the Government at their office for discussions about a global resolution of the case, which was offered. ▌

▌ Later that day, I received a proposed plea agreement dated November 12, 2020. Further discussions led to an amended proposal dated November 16, 2020. On November 17, 2020, I informed Ms. Keenan by email that we had an agreement. The Plea Agreement was signed and forwarded to the Government on November 24, 2020. A remote Plea Hearing was scheduled for December 4, 2020 before the Honorable Andrew E. Krause after a CARES Act application was granted by the Court (ECF Doc No. 97). On December 29, 2020, I was informed by co-counsel that the co-defendants would not accept the global plea offers and so the Government withdrew the plea offer to Brian, notwithstanding the fully signed agreement, and the Plea Hearing for December 4, 2020 was cancelled. I continued to make it clear to the Government that Brian wanted to avail himself of the Plea Agreement and requested that they reconsider and allow him to do so. Finally, the Government offered the defendant to plead guilty alone, pursuant to the previously executed November 16, 2020 Plea Agreement and on March 26, 2021, Brian immediately agreed.

On April 1, 2021, after a CARES Act finding (ECF Doc No. 119) the defendant pled guilty telephonically before the Court to a two-count Superseding Information. Count One charged him with conspiracy from 2017 to 2019, which encompassed overt acts of the originally charged Verizon Store Hobbs Act Robberies as well as an additional acts of Hobbs Act Robbery transportation of stolen goods and a cellphone wire fraud scheme, pursuant to 18 USC §371. Count Two charged the defendant with brandishing a firearm during the Verizon Store Robbery in Mahopac, New York on February 15, 2019, pursuant to 18 USC §924(c)(1)(A)(ii). Because

the defendant had been fully compliant for almost two years with all of his conditions of release since the pendency of the case, the Court permitted him to self-surrender to the United States Marshals on April 12, 2021, and sentencing was scheduled for Friday, July 16, 2021. He has been detained at the Westchester County Jail since April 12, 2021.

For Count One, the Plea Agreement stipulated to a Total Offense Level of 24 and Criminal History Category I for a Guidelines Range of 51-60 months' imprisonment. For Count Two, the offense level is inapplicable as the Guidelines sentence is a mandatory 84 months' imprisonment, to run consecutively to any other term of imprisonment, which in this case yields a total Guidelines Range of 135-144 months' imprisonment, with a mandatory minimum 84 months' imprisonment.

The Probation Final Presentence Report ("PSR") was received on June 23, 2021, comports with the sentence calculation stipulated to by the parties (PSR ¶119), and recommends a Guidelines Range sentence of 135 months' imprisonment. (PSR, Addendum, pp. 24-26). For the reasons further explained herein, given the defendant's remote and minor criminal history with his never having spent any time in jail; his role in the commission of the crimes; ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ I submit that Probation's recommended sentence is excessive, unduly harsh and would therefore be much greater than necessary.

## Family History

The defense concurs with the details of Brian's personal and family data as outlined by Probation (PSR ¶¶79-90). Brian Rodriguez, 28 years old, was born on July 17, 1992 in New York, New York, to his parents William Rodriguez and Dilcia Garcia and Franklin Rodriguez. Dilcia, 52 years old owns and runs a daycare center and William, 58 years old, is an assistant chef in Naples, Florida. They separated when Brian was 2 years old and are now divorced. Brian's mother married Daneris Encarnacion when he was 8 years old. He has three siblings, Brianna Encarnacion, 16 years old; Wildi Garcia, 27,; and Wilbek Rodriguez, 31, an engineer. Prior to his self-surrender, he lived with his mother, stepfather and siblings in Yonkers, New York. He maintains a close relationship with his parents and siblings. He has a girlfriend, Angela Medina, a beautician, who he has been dating for three years. Despite the advantages of being in a close-knit family, Brian had trauma as a youngster which could be a contributing factor to his severe substance abuse later in life. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ when she was 10 years old. Chemotherapy treatments caused hair loss and she was bullied in school which caused Brian a lot of stress and anxiety ▇▇▇▇▇▇▇▇▇▇. Random violent incidents have also plagued him growing up. As a teenager on vacation in the Dominican Republic, he was with a friend getting ice cream when a robbery took place and a shot was fired which struck his friend causing him a severe brain injury. At 18 years old, Brian was at a party in Yonkers when a fight broke out and his friend was stabbed. While he attempted to render aid, his friend died in his arms. He also suffered the trauma of becoming separated from his mother when she was deported from the United States. This had a terrible impact on him given the close bond he shares with his mother. As a result, he began using alcohol and drugs heavily. He stopped caring

3

about school and quit while needing only 12 more credits to obtain his bachelor's degree from Lehman College in the Bronx, New York. As his mother, Dilcia writes to the Court:

> "…Brian is an imperfect human being [but] is a person with many virtues and a heart full of love for others. I wish that your paths would have crossed at some point so you could understand why so mny people are willing to speak on his behalf… I can imagine…you might be questioning why is it that the man I have described to you would be capable of doing the things that he [has done]… I was forced to go to the Dominican Republic by immigration due to my legal status. This situation led him to the use of drugs. This vice slowly began to deteriorate his health, mentally and physically, and to the point of unfortunately affecting his morals and integrity."

Indeed, the voluminous letters from family, friends, clergy and fellow parishioners all attest to the Brian's good character, his struggles with substance abuse which is at the root of his commission of his crimes, and his very positive prospects for redemption.

Brian's girlfriend of three years, Angela Medina writes:

> "I wish I could tell you all the good things he has done so you can see him for more than what he is being charged for. I can't tell you he's perfect and I can't tell you that every decision he has made has been a good one. However, I can honestly tell you that the Brian from just a few years ago and the Brian I know today are two very different people. Over the years I've watched him battle, and overcome drug addiction and sometimes anxiety, but I've also watched him find a job, sign up for classes aiming to get his bachelor's degree…I can tell he isn't looking to find a way around his mistakes but rather understand them, understand himself more and reflect on his decisions. I hope that helps you see a little bit of the man that I see, and have gotten to know over the years…"

### Education and Employment History

Brian has a good education background and but for his substance abuse, he would have earned his bachelor's degree. He graduated from Saunders High School in Yonkers, New York in 2010. He earned his Associate of Arts Degree from Westchester County Community College in 2013. He majored in Media and Communications at Lehman College and as previously stated is currently only 12 credits short of his degree (PSR ¶106). As also reflected in the PSR, the defendant has a limited employment history but he was previously a full time student which can obviously affect availability for work. Since it would seem that Brian has only one more semester to complete his degree, his job prospects should be positive when he completes his prison sentence.

## Mental Health and Substance Abuse History

As confirmed by the PSR the defendant ▉▉▉▉▉▉▉▉▉ at the Westchester County Jail for ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

The defendant has a long history of substance abuse. ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉

For some time prior to his guilty plea, Brian appeared to me to be more stable, focused and sober. He certainly appears that way now when I meet with him in person or on video in preparation for this submission. I believe that with appropriate ongoing mental health treatment and attendance at appropriate programs while incarcerated, Brian has excellent prospects for sobriety.

Since his detention at the Westchester County Jail on April 12, 2021, Brian has been a model inmate. This is not surprising since he was also completely compliant with all conditions of his pretrial release on bond for almost two years before his guilty plea and self-surrender. It is notable that in the relatively short period time at the Westchester County Jail, he has been appointed as a trustee, a privilege given to inmates deemed trustworthy to clean the housing block, distribute food trays and other items to the inmates and alert officers to potential conflicts or other noteworthy developments among inmates.

## Sentencing Considerations

In *Gall v. United States*, 552 U.S. 38, 49-50 (2007), the Supreme Court held that the guidelines provide a starting point for a reasonable sentence, however, a sentencing court "must make an individualized assessment based on the facts presented." The Court also stated that the sentencing court cannot "presume that the Guidelines range is reasonable." Id. As a result, the sentencing court can use the advisory guidelines to create an appropriate sentence after considering the factors enumerated in 18 U.S.C. § 3553(a). That appropriate sentence may be outside the guidelines range as long as the "justification is sufficiently compelling to support the degree of the variance." *Gall*, at 50.

In *United States v. Booker*, 543 US 220 (2005), the Court held that the district court has the duty to consider the recommended guideline range along with the other factors listed in 18 USC §3553(a). It is therefore respectfully requested that the Court consider, along with the United States Sentencing Guidelines, the following factors and analysis:

## 18 U.S.C. § 3553(a) FACTORS

1. The nature and circumstances of the offense and the history and characteristics of the defendant.

    a)     The nature and circumstances of the offense

The defendant's conduct in this case is extremely serious, as he readily acknowledges. He participated in multiple robberies in which employees were restrained. He actions resulted not only in economic loss to the stores but also instilled terrible fear in the victims. His further participation in cell phone fraud and theft of jewelry paint a picture of a person totally out of control, influenced by drugs and alcohol with a poor choice of friends. His substance abuse is not offered as an excuse but rather as information to the Court as to what informed the defendant's actions and his motivation to commit these crimes, which was clearly to fund his drug habit. As stated in the PSR, although the defendant recognizes that it is very fortunate that nobody was physically injured or killed, he knows the psychological damage that he caused his victims during the robberies. As the defendant writes to the Court: "I know first hand the type of PTST (sic) gun violence can leave a person with and I'm shamed to admit I caused it for a couple dollars. Never did I stop to think how many lives I was affecting. For these reasons I am filled with remorse and disappointment in myself…" (Ex. B). ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

It is important to note, however, that Brian never personally possessed a gun or any other weapon during any of the crimes charged, nor was he ever a party to the conversations of his co-defendants, disclosed in the discovery, discussing guns and which one to use. Further, there are no videos, texts, social media postings or any or other electronic media whatsoever of Brian ever possessing or displaying a gun at any time, in stark contrast to the evidence that was admitted of such materials involving the co-defendants during Mr. Molina's trial.

    b)     The history and characteristics of the defendant.

The defendant's personal history and characteristics and background, however are more favorable. They paint a picture of an educated individual who went off-track due to unfortunate violent incidents that occurred in his life through no fault of his own. Watching a friend get shot in the head while on a family vacation and turned into a vegetative state and having another friend die in his arms from a stabbing no doubt caused him deep trauma. Having his mother absent due to deportation with his father absent in Florida appears to be the last straw which made him lose all hope and drive to be a productive member of society. With appropriate ongoing treatment and with the great support of family

6

and friends, his prospects bode well for a chance at a law-abiding and productive life when he is released from prison. At 28 years old, the defendant has only one prior offense, a misdemeanor DWI conviction from 10 years ago, from when he was only 18 years old. His behavior while on pretrial release for almost two years was exemplary without a single negative incident attests to his ability to follow the rules in a while at liberty in a structured and supervised environment. Similarly, his being rewarded by designation as a trustee by the Westchester County Jail shows that he can follow the rules of the institution and be an asset.

2.  The need for the sentence imposed and afford adequate deterrence

    To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

    I respectfully submit that the defense requested sentence of the mandatory minimum 84 months' imprisonment plus one day is a sufficient, but not greater than necessary sentence. Specific deterrence will be clearly satisfied. Whatever sentence is imposed will represent Brian's first prison sentence of his life. Adding any more time on to the mandatory minimum sentence of 84 months' and a day imprisonment will not result in greater assurance that Brian will not re-offend when he is released. Although Probation recommends a Guidelines Range sentence of 135 months' imprisonment because "he presents an imminent violent risk to society" (PSR, Addendum at p. 25) is he likely to re-offend if sentenced to "only" 84 months' imprisonment and not to reoffend, if sentenced to 120 months or to the Probation recommended Guidelines Range sentence of 135 months? What's the magic number that will assure that the defendant will not re-offend when released and society can be safe? To the contrary, I respectfully submit that additional time above the mandatory minimum would be purely punitive. Furthermore, Brian should not be in a worse position having admitted during his proffer to conduct that the Government may not have been aware. Indeed, 84 months' and one day imprisonment for a person who had never previously served a day in jail is sufficient. As for general deterrence, to the extent that the general public is even aware of this case, and notwithstanding the serious crime committed in this case, imposing a sentence of 84 months' imprisonment and one day on the defendant with a very limited criminal history and distinguishable role in the offenses would be more than sufficient to demonstrate punishment for the defendant's conduct.

## CONCLUSION

In light of the defendant's remote and minor criminal history with this case representing his first prison sentence; his distinguishable role in the commission of the crimes; his mental health and substance abuse history; ████████████████████████
████████████████████████████████████████████████████████████████
████████████████████
████████████ I respectfully submit that justice would be served by the imposition of the defense requested sentence of 84 months' and one day imprisonment to be followed by five

years' Supervised Release, which would demonstrate leniency, yet also fulfill all the goals pursuant to 18 U.S.C. § 3553(a).

                        Very truly yours,

                        Tanner & Ortega, L.L.P.

                        Howard E. Tanner

cc:    AUSA Lindsey Keenan (By ECF and Email/PDF)
       AUSA Shiva Logarajah (By ECF and Email/PDF)