USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 10/1/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRIAN RODRIGUEZ,

Petitioner,

–against–

USA,

Respondent.

24-cv-531 (NSR)

19-cr-449-2 (NSR)

**ORDER DENYING MOTION UNDER 28 U.S.C. § 2255**

NELSON S. ROMÁN, United States District Judge:

Petitioner, Brian Rodriguez ("Petitioner"), commenced this action on January 24, 2024, seeking to vacate, set aside, or correct his sentence following his conviction, pursuant to a guilty plea, for conspiracy to commit Hobbs Act robbery, interstate transportation of stolen property, and wire fraud, in violation of 18 U.S.C. § 371, and for brandishing a firearm during the course of a Hobbs Act robbery, and aiding and abetting the same, in violation of 18 U.S.C. §§ 924(c) and 2. Petitioner filed this motion under 28 U.S.C. § 2255, challenging his conviction and sentence. For the reasons stated below, Petitioner's motion is denied.

**BACKGROUND**

On January 24, 2024, Petitioner moved, pursuant to 28 U.S.C. § 2255, to vacate his conviction and sentence, alleging that his attorney, Howard E. Tanner, Esq., provided ineffective assistance of counsel in connection with his decision to plead guilty. (ECF No. 271.) The Court directed the Government to respond to Mr. Rodriguez's Section 2255 motion by March 29, 2024. (ECF No. 273.) On February 27, 2024, Richard D. Willstatter, Esq., appeared as an attorney for Petitioner. (ECF No. 278.) Two days later, on February 29, 2024, Mr. Willstatter proposed filing supplementary papers on or before April 15, 2024, and consented to an extension of time for the

Government to respond to Petitioner's Section 2255 motion. (ECF No. 279.) On March 1, 2024, the Court granted Petitioner's request. (ECF No. 280.) On April 15, 2024, Petitioner, through Mr. Willstatter, filed an amended motion to vacate his conviction and sentence, pursuant to 28 U.S.C. § 2255. (ECF No. 283.) On April 18, 2024, the Government requested that the Court set a deadline of June 17, 2024, for the Government to respond to Petitioner's Amended Section 2255 Motion. (ECF No. 287.) The Court granted the Government's request on April 19, 2024. (ECF No. 288.) On September 22, 2024, Mr. Tanner filed a declaration responding to Petitioner's allegations of ineffective assistance of counsel. (ECF No. 302.) On October 23, 2024, the Government filed its opposition to the Amended Section 2255 Motion. (ECF No. 307.) On November 22, 2024, Petitioner, through Mr. Willstatter, filed his reply. (ECF No. 313.)

## APPLICABLE LAW

### I. Petitions Under 28 U.S.C. § 2255

Section 2255(a) of Title 28 of the United States Code provides that:

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

Relief under this statute is available "only for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes a fundamental defect which inherently results in [a] complete miscarriage of justice." *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (citation and internal quotation marks omitted). "Because collateral challenges are in tension with society's strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir.

2010) (citation and internal quotation marks omitted). A live testimonial hearing is required to adjudicate a § 2255 motion only in circumstances not present here. *See Puglisi v. United States*, 586 F.3d 209, 213 (2d Cir. 2009) ("[I]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion.") (alteration, citations, and internal quotation marks omitted); *Chang v. United States*, 250 F.3d 79, 86 (2d Cir. 2001) (district court's review of the papers submitted with respect to the petition constituted a sufficient evidentiary hearing).

## II. Law Governing Ineffective Assistance of Counsel Claims

To prove ineffective assistance, a petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness"; and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 688 (1984); *accord United States v. Brown*, 623 F.3d 104, 112 (2d Cir. 2010); *Pham v. United States*, 317 F.3d 178, 182 (2d Cir. 2003); *see also Massaro v. United States*, 538 U.S. 500, 505 (2003) ("[A] defendant claiming ineffective counsel must show that counsel's actions were not supported by a reasonable strategy and that the error was prejudicial.").

In evaluating the first prong—whether counsel's performance fell below an objective standard of reasonableness— "'[j]udicial scrutiny ... must be highly deferential,'" and the petitioner must overcome the "'presumption that, under the circumstances, the challenged action might be considered sound trial strategy.'" *Bell v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689) (alteration in original); *see Dunham v. Travis*, 313 F.3d 724, 730 (2d Cir. 2002) (according counsel a presumption of competence). With respect to the second prong—the prejudice requirement—the petitioner "must show that there is a reasonable probability that,

but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694; *accord Lynn v. Bliden*, 443 F.3d 238, 247–48 (2d Cir. 2006). The Second Circuit generally "requires some objective evidence other than defendant's assertions to establish prejudice." *Pham*, 317 F.3d at 182 (citing *United States v. Gordon*, 156 F.3d 376, 380–81 (2d Cir. 1998) (per curiam)). Unlike the reasonableness prong, the prejudice determination "may be made with the benefit of hindsight." *Morgan v. United States*, 2009 WL 1172849, at *5 (E.D.N.Y. May 1, 2009) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 371–73 (1993)).

## DISCUSSION

Petitioner claims that his counsel, Mr. Tanner, rendered ineffective assistance by (1) failing to investigate whether the object used during the charged robberies was a "firearm" within the meaning of 18 U.S.C. § 924(c); (2) failing to adequately research and understand the relevant law governing the Section 924(c) firearm element; and (3) failing to properly advise Petitioner that the Government was required to prove that the object used during the robberies was a firearm and that the use of a pellet gun would provide a defense to the Section 924(c) charge. Petitioner contends that, as a result of these alleged deficiencies, he received erroneous advice concerning an issue central to his decision whether to accept the Government's plea agreement and, consequently, that his guilty plea was not knowing or intelligent. Petitioner further contends that counsel rendered ineffective assistance in connection with his proffer and the inclusion of uncharged conduct in the plea agreement.

### I. Ineffective Assistance Concerning the Section 924(c) Firearm Charge

#### a. Investigation

Petitioner alleges that Mr. Tanner rendered ineffective assistance of counsel by failing to adequately investigate Petitioner's purported assertion that a pellet gun, rather than a firearm, was

used during the charged robberies. (ECF No 271.) The Government disputes that characterization. Relying on Mr. Tanner's declaration, the Government contends that Mr. Tanner investigated the theory by asking Petitioner where the alleged pellet gun was located, who had obtained it, and where, when, and how it was obtained; requesting documentation concerning who had gotten it; reviewing the Government's discovery for evidence corroborating Petitioner's account; and speaking with the Government about whether pellets, CO2 cartridges, or other evidence consistent with a pellet gun had been recovered.

Under the first prong of *Strickland*, the Court must determine whether counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In conducting that inquiry, "judicial scrutiny of counsel's performance must be highly deferential," and counsel's decisions concerning the scope of an investigation are assessed in light of the information supplied by the defendant and the circumstances known to counsel at the time. *Id*. at 689, 691.

Here, Mr. Tanner's investigation did not fall below an objective standard of reasonableness. Mr. Tanner pursued Petitioner's assertion by questioning him about the purported weapon, seeking documentation that could corroborate his account, reviewing the discovery, and making inquiries concerning whether evidence consistent with an alleged pellet gun had been recovered. When Petitioner and his co-defendants were unable to provide sufficient information to locate the alleged weapon or substantiate its provenance, it was not objectively unreasonable for Mr. Tanner to decline to retain a private investigator to search for the weapon or otherwise pursue that particular avenue of investigation. *See id.* at 691 ("[W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.").

The record further reflects that, after counsel learned that a purported toy weapon had been located, counsel advised Petitioner not to participate in a proposed co-defendant meeting concerning the weapon. The Court considers that decision as part of the overall reasonableness of counsel's investigation, including counsel's prior assessment of the pellet-gun theory, the evidence produced in discovery, and the posture of the parties' plea negotiations.

Accordingly, Petitioner has not demonstrated that Mr. Tanner's investigation, at that stage of the proceedings, constituted deficient performance under *Strickland*.

**b. Knowledge of Applicable Law**

Petitioner next argues that Mr. Tanner was unfamiliar with the relevant law governing Section 924(c) and that, had he properly understood the law, he would have advised Petitioner differently. (Am. Mot. at 1-2.) Mr. Tanner disputes that assertion. In his declaration, Mr. Tanner states that he understood that a pellet gun does not constitute a "firearm" within the meaning of federal law and that he advised Petitioner that the use of a pellet gun therefore could provide a defense to the Section 924(c) charges. (Tanner Decl. ¶ 6.) Indeed, Mr. Tanner states that the distinction between a pellet gun and a firearm was discussed repeatedly with Petitioner throughout his representation. (*Id* ¶ 4.)

Petitioner points to no evidence demonstrating that Mr. Tanner was unaware of the governing law. Rather, Petitioner principally disputes whether Mr. Tanner adequately communicated that law to him and whether counsel properly investigated the factual basis for the pellet-gun theory. Those contentions concern the adequacy of counsel's advice and investigation, not counsel's knowledge of the applicable legal standard.

Accordingly, Petitioner has not established that Mr. Tanner rendered deficient performance based on an alleged failure to understand or remain apprised of the law governing Section 924(c).

**c. Advice**

Petitioner next contends that Mr. Tanner failed to adequately advise him that a pellet gun does not constitute a "firearm" within the meaning of Section 924(c), that the Government bore the burden of proving beyond a reasonable doubt that a firearm was used, and that Petitioner could proceed to trial and contest that element. (Rodriguez Decl. ¶¶ 23–24, 30; Am. Mot. at 3-4.) Petitioner asserts that Mr. Tanner instead advised him that it "did not matter" whether the weapon was real and encouraged him to plead guilty to the Section 924(c) charge. (Am. Mot. at 3-4.)

Mr. Tanner disputes Petitioner's account. In his declaration, Mr. Tanner states that he advised Petitioner that, if a pellet gun had been used, that fact would provide a defense to the Section 924(c) charges because a pellet gun is not a "firearm" under federal law. (Tanner Decl. ¶ 6.) Mr. Tanner further states that the pellet-gun issue was discussed repeatedly during private meetings with Petitioner and joint meetings with the co-defendants, and that he and Petitioner discussed the possibility of pleading guilty to the robbery offenses while proceeding to trial on the firearm charges. (*Id.* ¶ 4.) The contemporaneous record further reflects that counsel discussed the potential sentencing consequences of pursuing the pellet-gun theory and that Mr. Tanner forwarded Petitioner an analysis addressing the effect that an acquittal on a Section 924(c) count could have on his overall sentencing exposure. (*Id.* ¶ 18, Ex. D.)

The record therefore does not support Petitioner's assertion that Mr. Tanner failed to advise him of the legal significance of a pellet gun or of his ability to contest the firearm charges. Rather, the record reflects that counsel advised Petitioner that a pellet gun would not satisfy the firearm

element of Section 924(c), discussed the possibility of contesting the firearm charges at trial, and considered with Petitioner the potential consequences of doing so. Petitioner's disagreement with counsel's ultimate recommendation that he accept the plea agreement does not, without more, establish that counsel's advice fell below an objective standard of reasonableness.

Accordingly, Petitioner has not demonstrated deficient performance based on Mr. Tanner's advice concerning the Section 924(c) firearm element.

**d. Prejudice**

Even assuming that Mr. Tanner's representation was deficient, Petitioner cannot establish prejudice. In the plea context, Petitioner must show a reasonable probability that, but for counsel's alleged errors, he would have rejected the plea and proceeded to trial. The record does not support that conclusion. Although Petitioner initially rejected a plea to a single Section 924(c) count because he maintained that no real firearm was used, he later resumed plea negotiations and proceeded with the plea even after a purported pellet gun was located. Although Mr. Tanner advised Petitioner not to participate in the co-defendant meeting, Tanner states that Petitioner viewed the recovery as suspect, declined to proffer that the gun was fake, and nevertheless instructed him to proceed with the plea agreement.

Accordingly, Petitioner has failed to establish prejudice under *Strickland*.

## II. Ineffective Assistance Concerning the Proffer and Plea Agreement

**a. Advice to Proffer Uncharged Conduct**

Petitioner also contends that Mr. Tanner rendered ineffective assistance of counsel by advising him to proffer concerning uncharged criminal conduct. Mr. Tanner disputes Petitioner's characterization of that advice. According to Mr. Tanner, after the Government disclosed evidence connecting Petitioner to additional criminal conduct, he advised Petitioner that a proffer could

allow him to obtain coverage for that conduct as part of a plea agreement in exchange for a comparatively limited increase in his Guidelines range. Mr. Tanner further states that Petitioner was not required to proffer, chose to do so, and subsequently determined which offenses he wished to include or exclude from the plea agreement. (Tanner Decl. ¶¶ 4, 19.)

In light of the information available to counsel at the time, Petitioner has not demonstrated that this advice fell below an objective standard of reasonableness.

**b. Inclusion of Uncharged Conduct in the Plea**

Petitioner further contends that Mr. Tanner rendered ineffective assistance by advising him to accept a plea agreement that incorporated previously uncharged criminal conduct, thereby increasing his Guidelines range. Petitioner argues that competent counsel would not have advised him to plead guilty to conduct that had not been charged and that, absent the inclusion of that conduct, his Guidelines exposure would have been lower.

However, the record does not establish that Mr. Tanner's recommendation fell below an objective standard of reasonableness. After the Government disclosed evidence connecting Petitioner to additional criminal conduct, Mr. Tanner advised him that including certain uncharged offenses in the plea agreement would provide protection from potential prosecution for that conduct in exchange for a comparatively limited increase in his Guidelines range. Petitioner also participated in determining which offenses would be included, and the record reflects that an attempted Hobbs Act robbery was omitted at his request. In these circumstances, counsel's recommendation reflected a strategic assessment of the increased Guidelines exposure against the benefit of resolving Petitioner's potential liability for additional criminal conduct and was not objectively unreasonable.

Accordingly, Petitioner has not demonstrated that Mr. Tanner rendered deficient performance by advising him to accept a plea agreement that included certain previously uncharged conduct

**c. Prejudice**

Even assuming that Mr. Tanner's advice concerning the proffer or inclusion of uncharged conduct was deficient, Petitioner has not established prejudice. Although Petitioner asserts that he would not have accepted the plea agreement had he known the uncharged conduct would increase his Guidelines range, the record does not show a reasonable probability that he would have rejected the plea agreement and proceeded to trial.

The plea agreement reduced Petitioner's exposure from two Section 924(c) counts carrying a combined fourteen-year mandatory minimum to one Section 924(c) count, while also providing coverage for additional criminal conduct. Moreover, the record does not establish that the Government ever offered the alternative plea on which Petitioner relies. Accordingly, considering the substantial sentencing exposure Petitioner faced and the benefits obtained through the plea agreement, Petitioner has not demonstrated a reasonable probability that, but for counsel's alleged errors, he would have rejected the plea and proceeded to trial.

**CONCLUSION**

For the foregoing reasons, Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Clerk of the Court is kindly directed to mail a copy of this order to Petitioner and show proof of service on both the civil and criminal dockets. The Court further directs the Clerk to terminate the motions at ECF Nos. 271, 283, and 330 and to terminate the civil action at 24-cv-531.

SO ORDERED.

Dated: October 1, 2026
White Plains, New York



Nelson S. Román, U.S.D.J.